

# THE ATTORNEY GENERAL

## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

December 22, 1970

Hon. Grover E. Murray, President
Texas Tech University
School of Medicine
P. O. Box 4349
Lubbock, Texas 79409

Opinion No. M-757

Re: Whether, pursuant to
Article 2919e-2, Vernon's
Civil Statutes, the
Coordinating Board of
the Texas College and
University System may
order the initiation of
a degree program in vet-
erinary medicine at
Texas Tech University
School of Medicine
without passage of im-
plementing legislation.

Dear Mr. Murray:

Your recent letter requesting an opinion from this
office concerning the referenced matter poses the following
question:

"Whether the Coordinating Board, Texas
College and University System, acting under the
authority granted by the Higher Education Act of
1965, may, without passage of implementing legi-
slation, order the initiation of degree programs
in veterinary medicine at Texas Tech University
School of Medicine at Lubbock upon an application
duly made by the Board of Regents of the University
for such programs?"

Your letter also states that, on September 26, 1970,
the Board of Regents of Texas Tech University Medical School
unanimously passed the following resolution:

"WHEREAS, the Board of Regents of Texas Tech
University School of Medicine at Lubbock has ap-
proved a request for the development of a veteri-
nary medicine program; and

-3697-

"WHEREAS, it shall be necessary that applications be made to the appropriate authorities for the establishment of a veterinary medicine program;

"THEREFORE, BE IT RESOLVED that the necessary applications be made by the Administration to the appropriate authorities for the establishment of said veterinary medicine program."

The Texas Tech University Medical School was established in 1969 by Article 2632i, Vernon's Civil Statutes. Section 3 of that Article provides:

"The board of (regents of Texas Tech University, acting as the board of regents of the Medical School), or its successors, may prescribe courses leading to customary degrees and may make other rules and regulations for the direction, control, and management of the Texas (Tech University) School of Medicine as is necessary for the school to be a medical school of the first class."   (emphasis added.)

Section 8 of that Article provides:

"The medical school is subject to the continuing supervision and the rules and regulations of the Coordinating Board, Texas College and University System, as provided by the Texas Higher Education Coordinating Act of 1965 (Article 2919e-2, Vernon's Texas Civil Statutes)."

The powers of the Coordinating Board of the Texas College and University System are set forth in Article 2919e-2, Vernon's Civil Statutes, which is the Higher Education Coordinating Act of 1965 (hereinafter referred to as the "Act").

Apposite portions of the Act are as follows:

"Sec. 2. Wherever used in this Act the follow-
ing words and phrases shall have the indicated meaning:

"(a) 'Board' means the Coordinating Board, Texas
College and University System herein created.

"(e) 'Medical and dental unit' means The
University of Texas Medical Branch . . . and such
other medical or dental schools as may be estab-
lished by statute or as provided in this Act.

"(g) 'Institution of higher education' means
any public junior college, public senior college
or university, medical or dental unit or other
agency of higher education as herein defined.

"   . . .

"Sec. 3. . . . Functions vested in the governing
boards of the respective institutions of higher edu-
cation, not specifically delegated to the Board, shall
be performed by such boards.  The coordinating functions
and other duties delegated to the Board in this Act
shall apply to all public institutions of higher
education.

"   . . .

"Sec. 10. The Board shall represent the
highest authority in the State in matters of
public higher education and shall

"   . . .

"(3) Classify, and prescribe the role and
scope for, each public institution of higher
education in Texas and make such changes in
classification or role and scope of such in-
stitutions as it deems necessary.

"(4) Hear applications from the institutions for changes in classification or role and scope.

"(5) Review periodically all degree and certificate programs offered by the institutions of higher education to assure that they meet the present and future needs of the State.

"(6) Order the initiation, consolidation or elimination of degree or certificate programs where such action is in the best interests of the institutions themselves or the general requirements of the State of Texas, or when such action offers hope of achieving excellence by a concentration of available resources. No new department, school, degree program, or certificate program shall be added at any institution of higher education after the effective date of this Act, except with specific prior approval of the Board.

"  . . .

" Sec. 11. Develop and promote one or more degree or certificate programs to the highest attainable quality at each institution of higher education for which the particular institution is uniquely suited and for which there is marked promise of excellence.

"Sec. 12. Any order of the Board affecting the classification, role and scope and program of any institution of higher education shall be entered only (1) after a written factual report and recommendations from the Commissioner of Higher Education covering the matter to be acted upon has been received by the Board and distributed to the governing board and administrative head of the affected institution,

(2) after the question has been placed upon the agenda for a regularly-scheduled quarterly meeting, and (3) after the governing board of the affected institution has had an opportunity to be heard. Notice of the Board's action shall be given in writing to the governing board concerned not later than four months preceding the fall term in which the change is to take effect.

"Sec. 13. . . . No new department, school or degree or certificate program approved by the Board or its predecessor . . . shall be initiated by any institution of higher education after the effective date of this Act until the Board shall make a written finding that the department, school or degree or certificate program is adequately financed by legislative appropriation, by funds allocated by the Board, and/or by funds from other sources . . . ."   (emphasis added.)

Those portions of Section 10 of the Act, quoted supra, confer broad, discretionary powers on the Coordinating Board to prescribe and classify the "role" and "scope" of the Texas Tech University Medical School, and to order the initiation of degree programs.

Consequently, we are of the opinion that the Coordinating Board, after (1) receiving an application from the Texas Tech University Medical School requesting a change in its role and scope as required by Section 10(4) of the Act, and (2) after complying with the requirements of Section 12 of the Act quoted supra, may order the initiation of a degree program in veterinary medicine within the Texas Tech University Medical School, and thereby alter the traditional "role" and "scope" of that school.

We now come to the question of the necessity of implementing legislation to effectuate the initiation of the veterinary degree program.

We are of the opinion that this question has been conclusively settled by Attorney General's Opinion No. M-333 (1969), which held that the Board of Directors of Texas Technological College had the power to create a medical school at that institution without the passage of implementing legislation. See also Attorney General's Opinion No. M-365 (1969).

In view of the foregoing, your question is answered in the affirmative.

## S U M M A R Y

The Coordinating Board of the Texas College and University System, pursuant to Article 2919e-2, Vernon's Civil Statutes, may alter the role and scope of the Texas Tech University Medical School, and thereby order the initiation of a degree program in veterinary medicine within that School.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Austin C. Bray, Jr.
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

J. C. Davis
Jim Broadhurst
John Banks
Roland Allen

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant